**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:19-CV-00778-DJH-CHL**

**RUDD EQUIPMENT COMPANY, INC.,**                                    **Plaintiff,**

**v.**

**VOLVO CONSTRUCTION EQUIPMENT NORTH AMERICA, LLC,**     **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to compel (DN 92) filed by Defendant Volvo Construction Equipment North America, LLC ("Volvo") to which Plaintiff Rudd Equipment Company, Inc. ("Plaintiff") filed a response (DN 98). The motion is now ripe for review.

I.  BACKGROUND

On November 6, 2020, the Court conducted a telephonic status conference at the Parties' request to discuss ongoing discovery disputes. (DN 89.) After hearing a description of the issues and counsel's previous efforts to resolve the disputes, the Court granted leave for the Parties to proceed to motions practice. (*Id.*) On November 25, 2020, Rudd filed its motion to compel. (DN 93.)

Rudd's motion seeks information that it places into five categories: (i) "the GPS coordinates, physical addresses, and any other non-produced telematics information relating to any period of time since January 1, 2017 for any Volvo-branded GPE or Compact Equipment that Herc has possessed in Rudd's Territory"; (ii) "documents concerning its bids, proposals, or other communications about providing Volvo-branded GPE or Compact Equipment to other rental companies in a manner not exclusive to areas outside Rudd's Territory"; (iii) any survey responses which Herc has provided to Volvo regarding GPE or Compact Equipment or which

customers in Rudd's Territory have provided Volvo regarding Herc or other rental companies"; (iv) "documents relating to certain events that Herc held, and which Volvo attended, where they discussed Volvo products, and where Volvo provided financial support to Herc in order to facilitate marketing of the Volvo brand"; and (v) "non-privileged communications (including notes) regarding Herc's response to Rudd's prior subpoena." (DN 93, at PageID # 2307.)

## II. LEGAL STANDARD

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

## III. DISCUSSION

Below the Court addresses each of the five categories of information Rudd seeks to compel.

### a. Telematics Information

Rudd seeks production of "'telematics' information for any piece of Volvo-branded GPE or Compact Equipment that Volvo provided to Herc . . . [including] all information showing the addresses and GPS coordinates for each of these pieces of equipment." (DN 93, at PageID # 2309.)

Volvo tracks this information through a system called "Caretrack", which was designed to provide its purchasers with various aspects of machine monitoring. (DN 97, at PageID # 2423.)

Rudd says that the responsive information was the subject of a subpoena served on non-party Herc on March 11, 2020. (DN 54-5.) Subsequently, Rudd filed a motion to compel production of the information, and Herc filed a motion to quash the subpoena. (DN 53, 54.) The Court found that "[t]he requested material is clearly relevant in calculating the amount of damages Plaintiff is entitled to based on Herc's customer's use of Volvo equipment in Plaintiff's territory," but found that compelling Herc to comply with the subpoena would be unduly burdensome to Herc due to the volume and form of the responsive information. (DN 58, at PageID # 1150.) The Court further noted that alternatively, "this information could also be obtained from Volvo . . . ." (*Id.*) Rudd argues that the information is necessary for its claims because "it does not have another feasible method to determine what customers have patronized Herc in Rudd's Territory" and that the Court's order ruling on the subpoena to Herc essentially resolved any question of whether the information is discoverable from Volvo. (DN 93, at PageID # 2310.)

In response, Volvo states that it has already provided telematics information to Rudd in the form of a report that lists the city and state in which Volvo units were located going back through 2018. (DN 97, at PageID # 2424.) Volvo says that it withheld only the precise GPS coordinates and address of each unit at Herc's request due to its concerns about competitive harm in turning over information identifying its customers. (*Id.*) Volvo argues that the precise location of Volvo units in Rudd's territory is not relevant to the question of whether those units were sold or rented as a result of a breach in the dealer agreements. (*Id.*) Finally, Volvo argues that the Court's prior finding that compelling Herc to produce customer communications and

3

transactional documents would be unduly burdensome should similarly apply to the information at issue. (*Id.*)

As an initial matter, the Court has already determined that the location of Volvo units within Rudd's territory is relevant for discovery purposes. (DN 58, at PageID # 1150) ("The requested material is clearly relevant in calculating the amount of damages Plaintiff is entitled to based on Herc's customer's use of Volvo equipment in Plaintiff's territory."). Volvo's attempt to conflate the relevance of the information to the question of breach does not change its relevance to the issue of damages. Beyond the question of relevance, Volvo asserts that what it has provided, the city in which a unit is located at a particular time, "is more than sufficient to confirm which Herc GPE and/or Compact Equipment units have been in Rudd's territory on the dates that location information was available." (DN 97, at PageID # 2426.) Asserting unilaterally that limited responsive information is good enough is not a valid discovery objection. Volvo has not argued that the requested information is not proportional to the needs of the case, unduly burdensome to produce, or duplicative. Therefore, this is not a valid reason to withhold the information.

Finally, Volvo's assertion that the information "has already been determined to be protectible by the Court" is incorrect. (DN 97, at PageID # 2426.) The portion of the Court's prior ruling that Volvo references concerning "customer communications and transactional documents" dealt with completely different information, which included a list of Herc's customers and the prices they were each willing to pay. (DN 58, at PageID # 1152-53.) The Court has never held that any information shedding light on Herc's customer base is not discoverable. Therefore, the Court will grant Rudd's motion with respect to this category of documents.

### b. Documents Concerning Agreements with Other NRAs

Rudd seeks disclosure of "[a]ll documents concerning Volvo's discussions, proposals, bids, or other communications with, or internal communications about, United Rentals, Sunbelt Rentals, or other NRAs regarding the acquisition of Volvo-branded GPE or Compact Equipment in a manner that was not exclusive to locations outside Rudd's Territory." (DN 93-1.) Rudd believes the information is responsive to its first set of discovery requests served on February 17, 2020. (DN 93-3.) Volvo's responses to the relevant requests for production state that no responsive documents exist. (DN 97, at PageID # 2422.) A series of exchanges regarding the sufficiency of the responses followed in April 2020 during which Volvo maintained its position that the documents do not exist. (*Id.*) After depositions revealed what Rudd believed to be additional potential responsive information, Rudd followed up with Volvo requesting additional documents on June 25, 2020. (DN 93-2.) At that time, Volvo responded that it did not believe the documents fell into Phase I discovery in place at the time. (*Id.*) Rudd sent multiple emails to Volvo requesting the information in September 2020 to no avail. (DN 93, at PageID # 2312-13.)

Rudd argues that the information is necessary to determine whether Volvo has violated the its dealer agreements with Rudd with entities other than Herc and the likelihood that this conduct will be repeated. (*Id.*, at PageID # 2313.) Rudd further argues that Volvo has not raised any valid objections that would justify withholding the information. (*Id.*) In response, Volvo reaffirms that no responsive documents exist because it has not entered into any agreements with other NRAs to provide GPE or compact equipment in Rudd's territory. (DN 97, at PageID # 2423.) Volvo further argues that Rudd's current requests for any documents or communications with other NRAs regarding the sale of GPE or compact units broadens the request of the initial

requests for production beyond the scope of discovery because communications with NRAs that do not result in a potential breach of the dealer agreements are not relevant.  (*Id.*)

Rudd does not specify which request or requests to which the information it seeks is responsive.  Volvo suggests that Rudd is seeking further responses to requests for production 4, 5, and 7 of Rudd's first set of discovery requests.  (DN 97, at PageID # 2422.)  The Court's review of the discovery request found that requests for production 9 and 10 also touch on the topics at issue.  (*See* DN 93-3.)  Requests 4, 5, request production of "Agreements" between Volvo and other NRAs, and request 9 requests production of negotiation documents related to "any Agreement" executed between Volvo and other NRAs.  (DN 93-3.)  Responses to these requests are thus conditioned on the realized existence of an agreement.  Under Rudd's request definitions, "[t]he term Agreement as used herein shall mean and include any contract, arrangement, memorandum, written or verbal understanding, term sheet, program, manual, bulletin, policy, purchase order, sales invoice, rental invoice or other agreement, including but not limited to all addenda and exhibits thereto."  (*Id.*)  Volvo says that "[t]here are no agreements with NRA's other than Herc for the provision of GPE or compact Equipment in Rudd's Territory at any time since February 19, 2021."  (DN 97, at PageID # 2422.)  Rudd does not dispute this.  Request 7 seeks production of "any letters of intent, memoranda of understanding, or similar documents between Volvo and any NRA which cover any part of Rudd's territory."  (DN 93-3.)  Volvo again says that no such documents exist, which Rudd does not dispute.  (*See* DN 97, at PageID # 2422.)

The documents of which Rudd now moves to compel production are far broader than can be shoehorned into requests 4, 5, 7, and 9.  As discussed above, all of these requests depend on the existence of an actual (or in the case of request 9, "executed") agreement or understanding

between Volvo and another NRA.  Clearly, these requests are narrower than what Rudd now seeks, namely "[a]ll documents concerning Volvo's discussions, proposals, bids, or other communications with, or internal communications about, United Rentals, Sunbelt Rentals, or other NRAs regarding the acquisition of Volvo-branded GPE or Compact Equipment in a manner that was not exclusive to locations outside Rudd's Territory."  (DN 93-1.)

There is a possible argument, again that Rudd failed to specifically raise in its motion, that some of the information Rudd seeks is responsive to request 10.  Request 10 seeks "all documents relating to Herc's or any other NRA's activities relating to any GPE or Compact Equipment within Rudd's Territory at any time since February 19, 2015."  (DN 93-3.)  Rudd did not provide a definition for the term "activities" as used in its requests for production, and it is unclear whether Volvo's discussions with other NRAs constitute "activities . . . within Rudd's Territory" by the NRAs.  Because Rudd failed to argue that they do, the Court declines to address the question at this time.  In sum, the Court finds that Rudd failed to show that the information it seeks falls within the scope of a prior discovery request.  Therefore, Rudd's request for this information will be denied.

### c. Customer Survey Responses

Rudd seeks disclosure of completed customer surveys that Volvo routinely sends to purchasers of GPE and compact equipment.  (DN 93, at PageID # 2314.)  Specifically, Rudd seeks "[a]ny survey responses Herc has provided to Volvo, or other documents concerning surveys or similar communications involving Volvo and Herc . . . [and] [a]ny survey responses from customers who operate, in whole or in part, in Rudd's territory that reference Herc or other NRAs."  (DN 93-1.)  Rudd says that the customer surveys are responsive to its first set of

7

discovery requests, but that Volvo did not include them in its responses nor did it inform Rudd of their existence. (DN 93, at PageID # 2314.)

Rudd learned about the customer surveys during the June 2020 depositions, after which Rudd emailed Volvo specifically requesting their disclosure. (*Id.*, at PageID # 2315.) At that time, Volvo responded that it did not believe the documents fell into Phase I discovery in place at the time. (*Id.*) Volvo sent multiple follow up emails regarding the request after Phase II discovery began, but Volvo never disclosed the information. (*Id.*) Rudd argues that the information is relevant to Volvo's claims that "Herc is not actually harming Rudd, because customers who patronize Herc purportedly would not also patronize Rudd." (*Id.*, at PageID # 2314.) Rudd further argues that Volvo has not raised any valid objections that would justify withholding the information. (*Id.*) In response, Volvo argues that Rudd's first set of discovery requests do not cover the survey responses. (DN 97, at PageID # 2419.) Volvo further states that the specific survey responses Rudd requests either don't exist or are not in its possession. (*Id.*, at PageID # 2419-20.)

The Court finds that the requested information falls within the scope of request for production 15, which seeks "all documents that relate to or refer to any interactions between Volvo and any customer of Rudd, relating to Herc or any other NRA." (DN 93-3.) The Court now turns to Volvo's claim that it is not in possession of responsive information because it "was not able to locate any survey responses from Rudd customers which mention Herc." (DN 97, at PageID # 2420.) Volvo's search was not exhaustive of potentially responsive information, because the request for production is not limited to survey responses that "mention Herc," but rather covers responses "relating to Herc *or any other NRA*." (DN 93-3) (emphasis added). The Court agrees with Rudd's assertion that the information is relevant to whether Volvo's relationship with Herc

8

harmed Rudd's brand and customer relationships. Therefore, the Court will Volvo to produce any survey responses by Rudd's customers that relate to any other NRA.

### d. Documents Concerning Events with Herc

Rudd seeks disclosure of "[a]ll documents relating to the Herc 'events' that Volvo attended." (DN 93-1.) Specifically, Rudd seeks "any invitations . . . any emails discussing the Herc events, and any other substantive documents relevant to what occurred at these events (such as agenda or guidance for attendees)." (DN 93, at PageID # 2316.) Rudd says that the information is responsive to its first set of discovery requests, but that Volvo did not include them in its responses nor did it inform Rudd of their existence. (DN 93, at PageID # 2316.) After depositions revealed what Rudd believed to be additional potential responsive information, Rudd followed up with Volvo requesting additional documents on June 25, 2020. (*Id.*) There were several follow-up conversations regarding this request during which Volvo expressed to Rudd that the only documentation it had of the events was planning and logistics information not relevant to this case. (*Id.*) Rudd argues that the information is relevant in that it could reveal how Volvo is contracting with Herc in Rudd's territory, how Herc and Volvo's activities are affecting their and Rudd's brands, and whether Volvo and Herc are targeting Rudd's customer base. (*Id.*, at PageID # 2317.) In response, Volvo reaffirms that the events did not include any exclusive business offers to Herc and that the only documentation of these events are emails concerning planning and logistics. (DN 97, at PageID # 2420-21.) Volvo argues that these emails are neither relevant nor within the scope of any prior discovery request. (*Id.*, at PageID # 2421.)

The Court finds that the information falls within the scope of request for production 10, which seeks "all documents relating to Herc's or any other NRA's activities relating to any GPE or Compact Equipment within Rudd's territory at any time since February 19, 2015." (DN 93-3.)

9

Volvo argues that request 10 does not cover the information at issue because the tradeshows "are not activities within Rudd's Territory." (DN 97, at PageID # 9421.) Volvo misreads Rudd's request. Just because the tradeshows did not take place within Rudd's territory, that does not mean that they did not involve "GPE or Compact Equipment within Rudd's territory." (DN 93-3.) Indeed, Volvo's President, Stephen Roy, testified that the events are organized for Herc suppliers such as Volvo "to come in and to be able to show their organization, their different branches of products they have and discuss features and benefits of the products." (DN 93-4, at 200:13-17.) To the extent that they did, request 10 covers any related documents.

The Court now addresses the relevance question. Rudd argues that the information is relevant to "how Volvo is transacting with Herc across all territories (including Rudd's Territory), how Volvo's and Herc's activities are affecting their brands and other's brands (such as Rudd's), and whether Volvo and Herc are targeting customers that would fit Rudd's customer base . . ." (DN 93, at PageID # 2317.) Volvo argues that emails discussing planning and logistics, the only documents it claims to possess concerning the tradeshows, "do not speak to" the topics Rudd raises. (DN 97, at PageID # 2421.) It seems unlikely that Rudd is interested in the minutiae of travel arrangements or information of the kind that Volvo claims is irrelevant, and Rudd's motion clearly contemplates more substantive documents. Rudd maintains that no such documents exist, but clearly Rudd believes they do. It is not unreasonable to be skeptical that Volvo executives attended the annual tradeshows to showcase its products to Herc three times in the past three years and the only records of those events amount essentially to travel logs. Therefore, the Court will order Volvo to do an additional search for relevant responsive documents and produce any discoverable documents yielded by that search.

### e. Communications Concerning Herc's Responses to Rudd's Subpoena

Rudd seeks disclosure of "[a]ll non-privileged Internal Volvo communications, or communications between Volvo and Herc, regarding Rudd's Subpoena to Herc." (DN 93-1.) Rudd believes this information is responsive to its first set of discovery responses. (DN 93, at PageID # 2317.) During the June 2020 depositions, Rudd learned about communications between Herc and Volvo regarding Rudd's claims against Volvo, including communications regarding Rudd's subpoena served on Herc. (*Id.*, at PageID # 2317-18.) On June 25, 2020, Rudd specifically requested disclosure of these communications. (*Id.*, at PageID # 2318.) Rudd says that it followed up several times through October 2020 and that Volvo neither produced the communications nor raised any objection. (*Id.*) Rudd argues that the information is "directly relevant to how Herc perceived Rudd's claims, and how the injunctive relief would affect Volvo's relationship with Herc." (*Id.*) In response, Volvo states that the only responsive communications include "a handful of emails between Volvo's in-house counsel and Herc's in-house counsel discussing general matters related to the subpoena." (DN 97, at PageID # 2420.) Volvo argues that these communications are not relevant to the substantive issues in this case. (*Id.*)

The Court finds that Rudd has failed to meet its burden of showing that the communications at issue are relevant for discovery purposes. The only attempt at establishing relevance is a single sentence: "These discussions are directly relevant to how Herc perceived Rudd's claims, and how the injunctive relief would affect Volvo's relationship with Herc." (DN 93, at PageID # 2318.) However, Rudd fails to state how Herc's impression of the case could possibly bear on any on any issue in this case, and the Court cannot conceive of any way that it could.

While one can imagine how the impact of injunctive relief on Volvo and Herc's relationship may be relevant, Rudd does not show how this is the case. Moreover, Rudd does not establish any connection between the communications at issue and the possible impact of

11

injunctive relief.  None of the communications referenced in Rudd's motion appear to involve the effect of injunctive relief.  Rudd points to testimony by Volvo's Vice President of Sales Agako Nouch who testified that Volvo had been in communication with Herc regarding the suit.  (DN 93-5, at 185:16-17.)  When asked what Herc's reaction was to the pending suit, Mr. Nouch testified that "[t]hey just didn't really -- they don't feel it's -- you know, that they're part of it. That's, you know, a situation for an OEM and a dealer to resolve." (*Id.*, at 186:17-20.)  When specifically asked if Rudd's claims have caused Herc to change its approach to its relationship with Volvo, Mr. Nouch testified that "[w]e have not changed our ongoing relationship." (*Id.*, at 187:25.)  Mr. Nouch also testified about a 2020 phone call between Volvo and Herc concerning Rudd's subpoena.  (*Id.*, at 265:18-269:24.)  Nothing in Mr. Nouch's testimony suggests that the impact of injunctive relief was discussed during that call.

In sum, Rudd has failed to establish that the information it seeks is relevant for discovery purposes.  Therefore, the Court will not compel Volvo to disclose this information.

## IV. ORDER

For the foregoing reasons, Rudd's motion to compel (DN 93) will be granted in part and denied in part.

Accordingly,

IT IS HEREBY ORDERED as follows:

1. DN 93 is **GRANTED in part and DENIED in part**.
2. Rudd's motion to compel further production of certain telematics information for Volvo-branded GPE or Compact Equipment provided to Herc is **GRANTED**.  Volvo shall produce the information in accordance with this order on or before **May 7, 2021**.

3. Rudd's motion to compel documents concerning agreements with other NRAs is **DENIED**.

4. Rudd's motion to compel production of customer survey responses is **GRANTED**. Volvo shall produce the information in accordance with this order on or before **May 7, 2021**.

5. Rudd's motion to compel production of documents relating to Herc tradeshows is **GRANTED**. Volvo shall perform a search for responsive documents and produce any discoverable documents yielded by the search on or before **May 7, 2021**.

6. Rudd's motion to compel production of communications between Volvo and Herc regarding Rudd's subpoena is **DENIED**.

Colin H Lindsay, Magistrate Judge
United States District Court

April 23, 2021
cc: Counsel of record